gardless of how long after the release the failure occurred.

So too with explantation, Ms. Nodine's case. The express language allowed her to sue for "personal injuries" due to "future removal" and to do so "whatever the legal theory." At the time of the settlement, Ms. Nodine could not have reasonably understood the words to mean that she had to undergo the explantation and to sue all *before* expiration of the short balance, if any, remaining on an earlier limitations period. Rather, any reasonable and objective reader would have understood it to mean that she could wait and see, monitor the valve's performance, and with the ongoing advice of her doctor, decide whether and if so when to undergo the pain and risk of any explantation.

A sleeves-from-your-vest quality permeates the defendants' argument. Defendants admitted at oral argument that, under their views of the law and agreement, the limitations period could well have *already run* by the time of the settlement itself. This is because Ms. Nodine's fraud claim would have been based on the original misrepresentation that persuaded her to implant their product in her chest in the first place. But since the specified contingencies in the "future" had not yet occurred (and might never occur), Ms. Nodine could not have reasonably thought, when she made the release, that the time for assenting her "future" cause of action, "whatever the legal theory," had already come and gone.

Another paragraph of the settlement agreement (App. 69 ¶ 21) provided additional protection to residents of Canada and provided that if they later experienced "a strut fracture," they would have a standing offer from Pfizer to settle for $200,000 U.S. without prejudice to their right "to file an action on such claim in lieu of accepting the above offer." Has this standing offer also been eclipsed by an unreferenced statute of limitations? Has the right to "file an action" also been superseded? No one would have reason-

ably thought so when they signed the release in question.

In light of the foregoing, I would hold that the agreement itself expressly recognized the availability of "future" specified claims and that at least as to those future claims implicitly recognized that no limitations period would begin to run until the "future mechanical failure" or "future removal."

How many extant agreements or product claims will be eviscerated by today's panel decision is unclear but it will be many. Victims in these cases (and other BSCC plaintiffs) had better consult with their counsel as to whether to file protective actions to toll whatever time remains, if any, on the limitations period. Future agreements, counsel will now see, will have to provide even more explicit protection from the statute of limitations in order to make the conventional settlement model viable.

I respectfully dissent.

**SE JONG NOH, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 98–70982.**

United States Court of Appeals, Ninth Circuit.

Filed March 1, 2001

Before: HUG and THOMPSON, Circuit Judges, and RESTANI, Court of International Trade Judge.[1]

---

**1.** Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

## ORDER

The Respondent's petition for rehearing is granted. The opinion filed in this case on October 5, 2000 and published at 229 F.3d 771 is WITHDRAWN.

Scott A. OSENBROCK, Plaintiff–
Appellant,

v.

Kenneth S. APFEL, Commissioner,
Social Security Administration,
Defendant–Appellee.

No. 99–35376.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 5, 2000*

Filed March 2, 2001

---

\* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).